1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   WILLIAM HENRY MCCORMICK

11              Petitioner,              No. CIV S-05-0735 JAM GGH

12      vs.

13   DARREL ADAMS,

14              Respondent.             FINDINGS & RECOMMENDATIONS

15   _____/

16   I.  Introduction

17              Petitioner is a state prisoner proceeding through counsel with a petition for a writ

18   of habeas corpus.  Petitioner challenges his 2002 conviction on four counts of committing lewd

19   and lascivious acts with a minor (Cal. Penal Code § 288(a)), one count of sexual penetration with

20   a foreign object (Cal. Penal Code § 289(j)), and one count of exhibiting harmful matter with the

21   intent to seduce a minor (Cal. Penal Code § 288.2(a)).[1]  Petitioner is serving a sentence of ten

22   years and eight months, consecutive to 45 years to life in state prison.

23              This action is proceeding on an amended petition for writ of habeas corpus filed

24   on April 4, 2006 (hereinafter Pet.).  Petitioner raises the following claims: (1) his waiver of his

25   _____

26        [1]  Petitioner's conviction on one count of continuing sexual abuse of a minor (Cal. Penal
     Code § 288.5) was reversed on appeal.

                                    1

1  Sixth Amendment right to counsel was involuntary; (2) the trial court violated his right to

2  counsel when it denied his "mid-trial" request for an attorney; and (2) his right to due process

3  was violated by jury instruction error.

4          After carefully considering the record, the court recommends that the petition be

5  denied.

6  II.  Anti-Terrorism and Effective Death Penalty Act (AEDPA)

7          The AEDPA applies to this petition for habeas corpus which was filed after the

8  AEDPA became effective.  Neelley v. Nagle, 138 F.3d 917 (11th Cir. 1998), citing Lindh v.

9  Murphy, 521 U.S. 320 (1997).   The AEDPA "worked substantial changes to the law of habeas

10  corpus," establishing more deferential standards of review to be used by a federal habeas court in

11  assessing a state court's adjudication of a criminal defendant's claims of constitutional error.

12  Moore v. Calderon, 108 F.3d 261, 263 (9th Cir. 1997).

13          In Williams (Terry) v. Taylor, 529 U.S. 362 (2000), the Supreme Court defined

14  the operative review standard set forth in § 2254(d).  Justice O'Connor's opinion for Section II of

15  the opinion constitutes the majority opinion of the court.  There is a dichotomy between

16  "contrary to" clearly established law as enunciated by the Supreme Court, and an "unreasonable

17  application of" that law.  Id. at 405.  "Contrary to" clearly established law applies to two

18  situations:  (1) where the state court legal conclusion is opposite that of the Supreme Court on a

19  point of law, or (2) if the state court case is materially indistinguishable from a Supreme Court

20  case, i.e., on point factually, yet the legal result is opposite.

21          "Unreasonable application" of established law, on the other hand, applies to

22  mixed questions of law and fact, that is, the application of law to fact where there are no factually

23  on point Supreme Court cases which mandate the result for the precise factual scenario at issue.

24  Williams (Terry), 529 U.S. at 407-08.  It is this prong of the AEDPA standard of review which

25  directs deference to be paid to state court decisions.  While the deference is not blindly

26  automatic, "the most important point is that an *unreasonable* application of federal law is

2

1   different from an incorrect application of law....[A] federal habeas court may not issue the writ

2   simply because that court concludes in its independent judgment that the relevant state-court

3   decision applied clearly established federal law erroneously or incorrectly.  Rather, that

4   application must also be unreasonable." Id. at 410-11 (emphasis in original).  The habeas corpus

5   petitioner bears the burden of demonstrating the objectively unreasonable nature of the state

6   court decision in light of controlling Supreme Court authority.  Woodford v. Viscotti, 537 U.S.

7   19 (2002).

8           The state courts need not have cited to federal authority, or even have indicated

9   awareness of federal authority in arriving at their decision.  Early v. Packer, 537 U.S. 3 (2002).

10  Nevertheless, the state decision cannot be rejected unless the decision itself is contrary to, or an

11  unreasonable application of, established Supreme Court authority.  Id.  An unreasonable error is

12  one in excess of even a reviewing court's perception that "clear error" has occurred.  Lockyer v.

13  Andrade, 538 U.S. 63, 75-76 (2003).  Moreover, the established Supreme Court authority

14  reviewed must be a pronouncement on constitutional principles, or other controlling federal law,

15  as opposed to a pronouncement of statutes or rules binding only on federal courts.  Early v.

16  Packer, 537 U.S. at 10.

17          However, where the state courts have not addressed the constitutional issue in

18  dispute in any reasoned opinion, the federal court will independently review the record in

19  adjudication of that issue.  "Independent review of the record is not de novo review of the

20  constitutional issue, but rather, the only method by which we can determine whether a silent state

21  court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir.

22  2003).

23          In reviewing a state court's summary denial of a habeas petition, the court "looks

24  through" the summary disposition to the last reasoned decision.  Shackleford v. Hubbard, 234

25  F.3d 1072, 1079 n. 2 (9th Cir. 2000) (citing Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991)).

26  In the instant case, the California Supreme Court issued a summary denial of the claims raised in

                                                    3

1   the instant petition.  (Exhibits 3 and 4 to the Petition.)  Accordingly, the court looks through to

2   the reasoned decision of the California Court of Appeal.

3   III.  Background

4           The opinion of the California Court of Appeal contains a factual summary.  After

5   independently reviewing the record, the court finds this summary to be accurate and adopts it

6   below.

7               Defendant committed numerous and varied acts of sexual
                molestation against three girls, ages four, five, and six, over a
8               significant period of time.  Police were summoned and arrested
                defendant when the mother of the five-year-old victim found her
9               daughter in defendant's apartment naked with a sheet wrapped
                around her.  A medical examination of the three victims yielded
10              findings consistent with a history of molestation.  Defendant made
                statements to investigators which essentially admitted that the
11              molestations occurred.

12  Pet., Ex. 3 (hereinafter Opinion) at 2.

13  IV.  Discussion

14      A.  Faretta Waiver/Right to Counsel

15          Petitioner raises several claims arising from his successful request to represent

16  himself at trial and his subsequent request, made "mid-trial," for the assistance of an attorney.

17  First, he claims that "his right to represent himself pursuant to Faretta v. California, 422 U.S.

18  806, 819 (1975), was not knowingly and voluntarily made because the trial court promised

19  petitioner that he could withdraw his waiver at any time he felt that he was in over his head and

20  then reneged on that promise when petitioner asked for an attorney mid-trial."  (Pet. at 3.)

21  Second, he claims that the trial court's refusal to honor his "request for an attorney mid-trial"

22  deprived him of his Sixth Amendment right to counsel.  (Id.)  After setting forth the state court

23  decision and the applicable legal principles, the court will analyze these claims in turn below.

24          1.  State Court Decision

25          With respect to petitioner's claim that his Faretta waiver was involuntary, the

26  California Court of Appeal opined as follows:

4

Defendant asserts the trial court erred in granting his motion to represent himself (Faretta v. California (1975) 422 U.S. 806 [45 L.Ed.2d 562] (hereafter Faretta)). He claims the court "failed to adequately assure itself that [he] understood the significance and consequences of the decision to represent himself" and failed adequately to inquire into his ability to understand the risks and complexities of the case against him.  The record provides no support for these assertions.

"In order to make a valid waiver of the right to counsel, a defendant 'should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open." [Citation.]' [Citation.]  No particular form of words is required in admonishing a defendant who seeks to waive counsel and elect self-representation; the test is whether the record as a whole demonstrates that the defendant understood the disadvantages of self-representation, including the risks and complexities of the particular case.  [Citations.]." (People v. Koontz (2002) 27 Cal .4th 1041, 1070.)

Before ruling on his Faretta motion, the court received from defendant a written waiver form entitled "FOR DEFENDANTS WHO WANT TO REPRESENT THEMSELVES."  Defendant read and initialed a number of advisements, including: (1) "It is almost always unwise to represent yourself, and in so doing you may conduct a defense which may aid the prosecutor in convicting you of the charges"; (2) the prosecutor will be an experienced professional attorney who may be able to convict defendant by reason of advantage in skill and experience, regardless of his innocence of the charges; and (3) if defendant represented himself, he would not be able to appeal based on ineffective assistance of counsel. On the form, defendant also stated that he had previously represented himself in a jury trial, that he knew the possible defenses to the charges against him, and that he was aware of what needed to be proved in court to convict him of the charges.

The court also questioned defendant personally. Defendant correctly answered several questions about criminal procedure posed by the court.  He also told the court that he had experience as a paralegal and that he had previously represented himself in a multi-count felony trial, in which the jury had convicted him of only misdemeanors.  Defendant repeatedly insisted that he wanted to represent himself despite the advisement that he had the right to a public defender.

The court's inquiry was more than adequate.  The record shows that, as in Faretta, "defendant was literate, competent and understanding; nothing in the record suggests that he was mentally retarded or emotionally disturbed."  (People v. Silfa (2001) 88 Cal.App.4th 1311, 1322.)  Nothing about defendant's later

1   disclosed medical condition undermines the trial court's proper
    conclusion that defendant's waiver of counsel was knowing and
2   voluntary.

3   Pointing out that the judge twice told him to advise the court "at
    any time" if he changed his mind about self-representation,
4   defendant suggests this lured him into waiving his right to counsel.
    Not so.  The record demonstrates that defendant was intent on
5   representing himself because, in his words, "I do not trust
    attorneys," and because he had experienced some success in
6   representing himself in a prior trial.  It is readily apparent that the
    judge's comments about revisiting the issue at any time had no
7   influence upon defendant's decision.  There was no error.

8   (Opinion at 3-5.)

9           In addition to the foregoing facts, petitioner points out that after he was granted

10  the right to represent himself he experienced some difficulties in presenting his case, such as

11  being unable to write well with his handcuffs on, having problems with direct and cross-

12  examination and the presentation of his opening statement, not filing documents appropriately,

13  and generally having a hard time following the proceedings.  (Memorandum of Points and

14  Authorities in Support of Amended Petition (hereinafter P&A) at 17-19; Reporter's Transcript on

15  Appeal (RT) at 37, 46, 66, 385, 628; Clerk's Transcript on Appeal (CT) at 158, 161.)  Petitioner

16  concedes, however, that notwithstanding these problems he consistently affirmed that he still

17  wished to represent himself.  (RT at 48, 68, 127.)

18          With regard to petitioner's claim that his right to counsel was violated when the

19  trial court denied his mid-trial request for counsel, the California Court of Appeal described the

20  relevant facts and its decision on the claim as follows:

21  After the first witness called by the defense had testified, the
    following colloquy occurred:
22
    "THE DEFENDANT:  I'm having a real bad problem with my, you
23  know, since my surgery I have problems with a memory.  I can't
    remember the questions by the time I walk from this to up there.  I
24  –

25  "THE COURT:  Well, I don't know if that's true or not.  I'm not
    saying you're misrepresenting, but this could be, Mr. McCormick,
26  just another issue you want to inject into the record.

6

1    "THE DEFENDANT:  I understand that.  I understand that."

2    Three pages later in the transcript, the following exchange took
     place:
3

4    "THE DEFENDANT:  Your Honor, I - at this time I'm way over
     my head in this thing.  I'm having a real bad problem.  Is there any
     chance that - *I know Officer Mayberry's going to be gone next*
5    *week, but can we put this off and maybe I can see if I can find*
     *counsel that might help me?*  [Emphasis added.]
6

7    "THE COURT: No.  Mr. McCormick, see, you had your surgery a
     few years ago, correct?

8    "THE DEFENDANT:  Uh-huh.

9    "THE COURT:  Correct?

10   "THE DEFENDANT:  About four years ago.

11   "THE COURT:  About four years ago.  So anyone in your position
     representing himself or herself against these charges would
12   ordinarily be way over their head.

13   "THE DEFENDANT:  Yeah.

14   "THE COURT:  And so you made the decision to represent
     yourself.
15
     "THE DEFENDANT:  Uh-huh.
16
     "THE COURT:  And you're pretty much stuck with that decision.
17   So, no, I'm not going to grant a continuance for a week.  This jury
     expects to be finished with this and the court hopes to have this
18   finished at the end of next week.  So, no.  You're experiencing the
     pitfalls and dangers of self-representation, which you were advised
19   of.  That's - but you've elected to represent yourself."

20   Defendant contends the court abused its discretion by denying what
     he describes as a midtrial request for the appointment of counsel to
21   represent him throughout the remainder of the trial. But defendant
     did not make an unequivocal request for the appointment of an
22   attorney to substitute in as trial counsel.  He simply asked for a
     one-week continuance of the trial for the purpose of "find[ing]
23   counsel that might help [him]," a request that was consistent with
     defendant's earlier statement to the court that he knew of an
24   attorney whom he could consult for advice but would not be

25   /////

26   /////

serving as trial counsel.[2]  Since defendant did not ask to be relieved of his <u>Faretta</u> waiver and did not ask the court to appoint an attorney to represent him, the court did not err in failing to do so.

In any event, even if we were to construe defendant's motion for a continuance as a request for the appointment of counsel, it was properly denied.

"A defendant who suddenly eschews self-representation may find that he will not be relieved of his original choice.  A trial judge is not obligated to restore counsel if a <u>Faretta</u> defendant changes his mind in midtrial and no longer wants to represent himself.  A request for restoration of the services of counsel is left to the sound discretion of the trial court, exercised in light of several factors, including:  '"(1) defendant's prior history in the substitution of counsel and the desire to change from self-representation to counsel-representation, (2) the reasons set forth for the request, (3) the length and stage of the trial proceedings, (4) disruption or delay which reasonably might be expected to ensue from the granting of such motion, and (5) the likelihood of defendant's effectiveness in defending against the charges if required to continue to act as his own attorney.'"  (<u>Brookner v. Superior Court</u> (1998) 64 Cal.App.4th 1390, 1394, quoting <u>People v. Gallego</u> (1990) 52 Cal.3d 115, 164 and <u>People v. Elliott</u> (1977) 70 Cal.App.3d 984, 993-994.)

Here, the trial court harbored legitimate skepticism about defendant's sudden claim of memory problems because of surgery he underwent four years before.  Defendant had vigorously represented himself up until then, which included several motions to dismiss for violation of his speedy trial rights and motions to suppress evidence.  The request was untimely, coming only after the prosecution had finished presenting its case and defendant was putting on his.  And one week was not nearly a sufficient period within which competent counsel could get up to speed and take over a complex child molestation trial with a life sentence hanging in the balance.  Appointment of counsel at that late stage would almost certainly have required a prolonged postponement of the trial, severely disrupting the proceedings.

Defendant complains that the trial court reneged on a promise it

---

[2]  Defendant told the court "I have a gentleman that's a licensed attorney that was going to assist me, possibly, during the trial."  Defendant said the attorney's name is Thomas Patrick.  The court replied, "I do not know what exactly you and Mr. Patrick have in mind in terms of assistance[;] at this time[,] however, I'm informed that you alone are your own counsel of record."  The court continued, "If Mr. Patrick is performing investigative services for you, or perhaps assisting you with legal research, that's one thing; but I want to make it clear, from my understanding of the file right now Mr. Patrick is not your co-counsel or counsel."  Defendant replied, "[T]hat's correct."

made twice when it advised him that, if he felt he was in "over [his] head," he could request counsel at any time. But the court's remarks, made very early in the proceeding, could not be reasonably understood as a guarantee that defendant could, at any stage of the trial, summarily withdraw his <u>Faretta</u> waiver and secure appointed counsel. This is especially true in light of the admonition in the written waiver defendant signed, which told him: "If you change your mind during the trial, you may not be permitted to postpone the case while you obtain an attorney." (Emphasis added.)

In short, defendant knowingly and enthusiastically exercised his constitutional prerogative to act as his own attorney; by the time he sought a continuance to obtain the assistance of counsel, it was too late in the proceeding to change his mind. The trial court did not abuse its discretion in not appointing counsel to represent defendant and in denying his request for a continuance.

(Opinion at 5-9.)[3]

## 2. Petitioner's Claims

In the petition before this court, petitioner does not claim that the trial court failed to give him appropriate warnings about the dangers and disadvantages of self-representation at the time he expressed a desire to represent himself. Rather, he claims that the trial court's failure to honor the assurance of the pre-trial judge that he could obtain an attorney "at any time" rendered his waiver of the right to counsel involuntary. Petitioner argues, as he did in state court, that "his decision to represent himself at trial was not truly voluntary because it was made in consideration of the repeated and express representations of the trial court that if he got in 'over his head' 'at any time,' petitioner could revisit his decision and ask for the appointment of counsel." (P&A at 20.) Petitioner argues that his decision to represent himself "was made, in part, on the basis of the express promise, twice made, that petitioner could withdraw his waiver if he changed his mind at any time." (Id.) He contends that the trial court breached its promise in this regard when it refused to allow petitioner to obtain an attorney mid-trial when he asked for

---

[3] This court notes that the judge who informed petitioner he could change his mind about self-representation "at any time" was not the same judge who later tried the case and denied petitioner's request to obtain counsel.

9

one.  He characterizes the pre-trial judge's comments as "a promise or an inducement" to invoke his right to self-representation and argues that "an agreement based on false promises cannot be considered 'knowing and voluntary.'"  (Id. at 24.)

Petitioner further argues that the trial judge acted on the erroneous belief that he lacked authority to allow petitioner to withdraw his waiver of the right to counsel in mid-trial.  (Id.)  In support of this argument, he notes that the trial judge told petitioner he was "pretty much stuck with" his decision to represent himself.  (Id.)  In addition, petitioner denies that his request for counsel was equivocal, as the state appellate court found.  (Id. at 25.)  He contends that he made it clear he wanted an attorney, even though it would result in a delay of the trial.  (Id.)  Petitioner also argues that any ambiguity in this regard should have been construed against a finding of waiver.

Finally, petitioner denies that he was seeking to delay the proceedings when he made his request for counsel.  (Id. at 26-27.)  He notes that the trial judge himself informed the parties that the trial might have to be delayed for two weeks to accommodate the judge's vacation.  He argues, "evidently, the court had no qualms about continuing the trial for two weeks to accommodate its own vacation schedule, yet felt compelled to deny petitioner a continuance for a period half that length so that he might exercise his constitutional right to counsel."  (Id. at 27.)  Petitioner also points out that the trial judge granted a one-week continuance to accommodate one of the prosecutor's witnesses and that, until he requested time to obtain counsel, petitioner had "steadfastly maintained his right to a speedy trial up to that point."  (Id.)  He argues, "it was only when petitioner sought to exercise his 6th Amendment right to counsel, a more weighty reason for a continuance than the need for a medical witness or a vacation, that time suddenly became a concern to the court and the request was denied to avoid 'delay' in the trial."  (Id.)

/////

/////

10

1   Petitioner summarizes his arguments as follows:

2   In sum, the Superior Court reneged on Judge Curle's repeated
    promises. Petitioner's request was not equivocal. The trial court
3   erroneously believed that it did not have the authority to grant
    petitioner's request for counsel. Petitioner was clearly not
4   motivated by a desire to delay the trial. The California Courts
    acted in a cavalier fashion to deprive petitioner of his right to an
5   attorney and deprived petitioner of his Sixth Amendment right to a
    fair trial and his Fifth and Fourteenth Amendment rights to due
6   process."

7   (Id. at 28.)

8                    3.  Applicable Law

9           In Faretta v. California, the United States Supreme Court held that an accused has

10  a Sixth Amendment right to conduct his own defense, provided only that he knowingly and

11  intelligently waives his right to counsel and that he is able and willing to abide by rules of

12  procedure and courtroom protocol. 422 U.S. at 821. The holding of Faretta is based on "the

13  long-standing recognition of a right of self-representation in federal and most state courts, and on

14  the language, structure, and spirit of the Sixth Amendment." McKaskle v. Wiggins, 465 U.S.

15  168, 174 (1984). In order to successfully invoke the right to self-representation, the defendant's

16  waiver of counsel must be "timely, not for the purposes of delay, unequivocal, and knowing and

17  intelligent." United States v. Erskine, 355 F.3d 1161, 1167 (9th Cir. 2004).

18          If a defendant chooses to represent himself, his decision to do so must be made

19  knowingly and intelligently. Faretta, 422 U.S. at 807; Godinez v. Moran 509 U.S. 389, 400

20  (1993). See also Indiana v. Edwards, __ U.S. __, 2008 WL 2445082 (June 19, 2008). The

21  purpose of the "knowing and voluntary" inquiry "is to determine whether the defendant actually

22  does understand the significance and consequences of a particular decision and whether the

23  decision is uncoerced." Godinez, 509 U.S. at 401. "Although a defendant need not himself have

24  the skill and experience of a lawyer in order competently and intelligently to choose

25  self-representation, he should be made aware of the dangers and disadvantages of

26  self-representation, so that the record will establish that he knows what he is doing and his choice

11

is made with eyes open." Faretta, 422 U.S. at 835.  A trial court is not required to assess whether petitioner is familiar with evidentiary rules or the relevant law.  Id. at 836.  As has been recognized:

> In fact, a defendant's technical knowledge is not relevant to an assessment of his knowing exercise of the right to defend himself. As the Supreme Court recently stated, "the trial judge is under no duty to provide personal instruction on courtroom procedure or to perform any legal chores' for the defendant that counsel would normally carry out."

Lopez v. Thompson, 202 F.3d 1110, 1119 (9th Cir. 2000) (en banc) (quoting Martinez v. Court of Appeal of California, 528 U.S. 152, 161 (2000)).

However, a "careful inquiry" by the trial court regarding the defendant's request for self-representation is "essential" to protecting both a defendant's right to counsel and his right to represent himself.  United States v. Hernandez, 203 F.3d 614, 623 (9th Cir. 2000).  The Ninth Circuit Court of Appeals has advised that "suggesting that there are consequences in the abstract is not enough; there must be some instruction or description, however minimal, of the specific dangers and disadvantages of proceeding pro se" in order for a waiver of the right to counsel to withstand constitutional scrutiny.  Hayes, 231 F.3d 1132, 1137-38 (9th Cir. 2000).  In Hayes, the court declined to adopt any standard formula to meet the requirements of Faretta.  231 F.3d. at 1138.  Rather, the court explained that "[i]n determining whether a defendant legitimately waived counsel, a trial judge must focus on the defendant's understanding of the importance of counsel, not the defendant's understanding of the substantive law or procedural details."  Id.[4]

_____

[4] In this regard, the Ninth Circuit suggested, but did not require, the following advisement:

> The court will now tell you about some of the dangers and disadvantages of representing yourself. You will have to abide by the same rules in court as lawyers do. Even if you make mistakes, you will be given no special privileges or benefits, and the judge will not help you. The government is represented by a trained, skilled prosecutor who is experienced in criminal law and court procedures. Unlike the prosecutor you will face in this case, you will be exposed to the

1          In cases decided prior to <u>Hayes</u>, the Ninth Circuit had suggested that, as a

2    precondition to accepting a request to proceed pro se, the defendant must be made aware of: "(1)

3    the nature of the charges against him; (2) the possible penalties; and (3) the dangers and

4    disadvantages of self-representation."   <u>Hernandez</u>, 203 F.3d at 623-624.   "A waiver of counsel

5    cannot be knowing and intelligent unless the accused appreciates the possible consequences of

6    mishandling these core functions and the lawyer's superior ability to perform them."   <u>United</u>

7    <u>States v. Balough</u>, 820 F.2d 1485, 1487 (9th Cir. 1987) (quoting <u>United States v. Kimmel</u>, 672

8    F.2d 720, 721 (9th Cir. 1982)).   If the trial court does not explain on the record the risks of

9    self-representation, a reviewing court must consult "the particular facts and circumstances

10   surrounding that case, including the background, experience and conduct of the accused" to

11   determine whether the waiver was nonetheless knowing and intelligent.   <u>Kimmel</u>, 672 F.2d at

12   1252 (quoting <u>Cooley v. United States</u>, 501 F.2d 1249, 1252 (9th Cir. 1974)).   <u>See also</u> <u>Lopez</u>,

13   202 F.3d at 118 (reviewing the record as a whole in determining that petitioner's waiver of his

14   right to representation was knowing and intelligent).   The court must "approach this question

15   cautiously, indulging 'every reasonable presumption against waiver.'"   <u>United States v. Farhad</u>,

16   190 F.3d 1097, 1099 (9th Cir. 1999) (quoting <u>United States v. Arlt</u>, 41 F.3d 516, 520 (9th Cir.

17   1994)). <u>See also</u> <u>Brewer v. Williams</u>, 430 U.S. 387, 404 (1977) (every reasonable presumption

18   \\\\\

19   \\\\\

20   _____

21         dangers and disadvantages of not knowing the complexities of jury selection, what
     constitutes a permissible opening statement to the jury, what is admissible

22   evidence, what is appropriate direct and cross examination of witnesses, what
     motions you must make and when to make them during the trial to permit you to

23   make post-trial motions and protect your rights on appeal, and what constitutes
     appropriate closing argument to the jury.

24   <u>Hayes</u>, 231 F.3d at 1138-39.   However, it is clear that neither the U.S. Constitution nor the
     Supreme Court's decision in <u>Faretta</u> compels that the state courts engage in any specific colloquy

25   with a defendant seeking to represent himself.   <u>Lopez</u>, 202 F.3d at 1117.   Rather, the state trial
     court need only make the defendant "aware of the dangers and disadvantages of self-

26   representation ." <u>Id.</u> at 1117-18 (quoting  <u>Faretta</u> 422 U.S. at 835).

1  against waiver); Barker v. Wingo, 407 U.S. 514, 525 (1972) (same).[5]

2          The matter of whether to grant a trial continuance is traditionally within the

3  discretion of the trial judge.  Avery v. Alabama, 308 U.S. 444, 446 (1940); Grotto v. Herbert, 316

4  F.3d 198, 206 (2nd Cir. 2003).  There are no specific tests for deciding when a denial of a

5  continuance is so arbitrary as to violate due process.  Ungar v. Sarafite, 376 U.S. 575, 589

6  (1964); Grotto, 316 F.3d at 206.  "The answer must be found in the circumstances present in

7  every case, particularly in the reasons presented to the trial judge at the time the request is

8  denied."  Ungar, 376 U.S. at 589.  Thus, under some circumstances a denial of a request for more

9  time may not violate due process "even if the party fails to offer evidence or is compelled to

10  defend without counsel."  Id.  See also Morris v. Slappy, 461 U.S. 1, 11-12 (1983) (no Sixth

11  Amendment violation based upon the denial of a request for continuance to allow better

12  preparation by new attorney, who had been appointed six days prior to trial after original

13  appointed counsel was taken ill).  "[B]road discretion must be granted trial courts on matters of

14  continuances; only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a

15  justifiable request for delay' violates the right to the assistance of counsel."  Id. at 11 (quoting

16  Ungar,  376 U.S. at 589.)

17          On direct appeal from a federal criminal conviction, the Ninth Circuit Court of

18  Appeals balances four factors in determining whether a trial court was unreasonable in denying a

19  motion to continue: (1) the appellant's diligence in preparing his case; (2) the likelihood that the

20  continuance would serve a useful purpose; (3) whether the continuance would inconvenience the

21  parties, the court, or other witnesses; and (4) whether the appellant was prejudiced by the district

22

23          [5] The question of who bears the burden of proof on this issue in this context is arguably
   unresolved.  Compare Brewer, 430 U.S. at 404 ("it [is] incumbent upon the State to prove 'an
   intentional relinquishment or abandonment of a known right or privilege.'") and United States. v.
24  Lopez-Vasquez, 1 F.3d 751, 754 (9th Cir. 1993) (same) with Johnson v. Zerbst, 304 U.S. 458,
   468-69 (1938) (burden of proof rests upon a habeas petitioner to establish that he did not
25  competently and intelligently waive his constitutional right to assistance of counsel.)
   Nonetheless, in light of the undisputed record in this case, resolution of the issue posed does not
26  rest on the burden of proof.

1  court's refusal to grant the request for a continuance.  <u>United States v. Rivera-Guerrero</u>, 426 F.3d

2  1130, 1138-39 (9th Cir. 2005); <u>see also United States v. Flynt</u>, 756 F.2d 1352, 1359 (9th Cir.

3  1985).[6]  Additionally, "[w]hen a motion for a continuance arguably implicates a defendant's

4  Sixth Amendment right to counsel, the court must consider the effect of its decision on this

5  fundamental right."  <u>United States v. Garrett</u>, 179 F.3d 1143, 1147 (9th Cir. 1999) (en banc).  <u>See</u>

6  <u>also Holloway v. Arkansas</u>, 435 U.S. 475, 489 (1978) ("assistance of counsel is among those

7  'constitutional rights . . . basic to a fair trial'").

8       4. <u>Analysis</u>

9         There appears to be no serious dispute that petitioner's initial request to represent

10  himself was unequivocal and that he received appropriate and complete warnings about the

11  dangers and disadvantages of self-representation at the time he made his decision to proceed

12  without counsel.  There is also no dispute that petitioner was competent to make the decision to

13  waive his right to counsel.  The question presented here is whether the trial court's failure to

14  appoint counsel for petitioner in mid-trial violated the Sixth Amendment and rendered

15  petitioner's waiver of counsel involuntary because of petitioner's reliance on the promise of the

16  pretrial judge that he could obtain counsel "at any time."  For the reasons explained below, this

17  court concludes that petitioner voluntarily waived his right to counsel and invoked his right to

18  represent himself at trial, and that the trial court properly denied petitioner's later request for the

19  assistance of counsel.

20       a. <u>Petitioner's Waiver of the Right to Counsel was Voluntary</u>

21         On the first day of the criminal proceedings, petitioner informed the judge that he

22  intended to represent himself.  (RT at 1-2.)  After ascertaining that petitioner understood how

23  many jurors it would take to acquit or convict him, and that his "total exposure" on the charged

24  ───────────────

25     [6]  In the context of a collateral challenge to a state court conviction, this court is not required to apply this same test.  Nonetheless, the criteria identified by the Ninth Circuit in reviewing federal convictions on appeal is useful in analyzing the constitutional claim posed

26  here.

1   crimes was "the rest of [his] life," the judge gave petitioner a <u>Faretta</u> waiver form to fill out.  (<u>Id.</u>

2   at 2-3.)  Between the waiver form and the judge's advisements, petitioner was informed of the

3   nature of the charges against him, possible penalties, and the dangers and disadvantages of self-

4   representation.  Among other things, the waiver form advised petitioner that "if you change your

5   mind during the trial, you may not be permitted to postpone the case while you obtain an

6   attorney."  (<u>Faretta</u> waiver form, lodged on August 2, 2006.)  In the space asking why he wanted

7   to represent himself, petitioner wrote, "I do not trust attorneys."  (<u>Id.</u>)  After petitioner filled out

8   the form, the judge noted that petitioner was an experienced paralegal and that he had previously

9   represented himself in a felony trial.  (RT at 3.)  The judge then ruled:

> Okay.  Based on that, based on your recommendations here, based
> on what I know of your understanding of the law, that you know
> that you have a right to have a lawyer and what's going on, I'm
> going to go ahead and we'll how [sic] see how you do.  So you can
> represent yourself.  You understand that at any time you feel the
> waters over your head, you can ask for an attorney?

14  (<u>Id.</u> at 3-4.)  Petitioner responded, "Yes thank you."  Later in the proceedings, at petitioner's

15  arraignment, the judge asked petitioner whether he wished to continue representing himself.  (<u>Id.</u>

16  at 48.)  When petitioner stated that he did, the court asked, "you understand at any time if you

17  change your mind you let me know?  (<u>Id.</u>)  Petitioner responded, "Yes, sir."  (<u>Id.</u> at 49.)  Still

18  later, the judge again asked petitioner whether he "still wish[ed] to remain in pro per."  (<u>Id.</u> at

19  68.)  Petitioner responded, "Absolutely.  I'm looking forward to this trial."  (<u>Id.</u>)

20          The state appellate court found that petitioner was "intent on representing

21  himself" because he didn't trust lawyers and because he had successfully represented himself in a

22  prior criminal trial.  (Opinion at 5.)  The court concluded that, under these circumstances, the

23  judge's comments about revisiting the issue of self-representation did not influence petitioner's

24  decision to waive his right to counsel.  The state court's conclusion in this regard is a reasonable

25  construction of the facts of this case.  There is nothing in the record which indicates that

26  petitioner was induced to request self-representation by the judge's assurances that he could

16

1  change his mind, or that he was coerced to choose self-representation as a result of these

2  statements by the judge.  On the contrary, the record reflects that petitioner was determined to

3  represent himself before the proceedings even began.  It is noteworthy that petitioner expressed a

4  desire to represent himself as soon as he appeared in court, well before the judge said anything

5  about the possibility of changing his mind.

6           The situation presented by this case can be distinguished from cases cited by

7  petitioner wherein the record reflected actual reliance by the defendant on promises made by the

8  trial court.  Cf. United States v. Wood, 378 F.3d 342, 350 (4th Cir. 2004) (record reflected that

9  court's erroneous advice, uncorrected by prosecutor, "constituted a substantial factor in

10  [defendant's] decision to plead guilty"); United States v. Amaya, 111 F.3d 386, 389 (5th Cir.

11  1997) (defendant signaled his reliance on judge's advice by seeking to retract his plea once the

12  district court acknowledged its error in advising defendant that it could make a sua sponte

13  downward departure in sentencing); Finch v. Vaughn, 67 F.3d 909, 915 (11th Cir. 1995)

14  (defendant actually sought further assurance from the state court that his counsel's advice

15  regarding his possible sentence was correct before pleading guilty).  Here, there was no

16  significant evidence that petitioner relied on the judge's comments in making his decision to

17  represent himself.[7]  On the contrary, the record reflects that petitioner was determined to

18  represent himself at his trial and only later changed his mind because he believed he was not

19  performing well.  Under the circumstances presented here, this court cannot conclude that

20  petitioner's waiver of his right to counsel was involuntary.

21  \\\\\

22

23        [7] Petitioner notes that when he later requested counsel, he used the same terminology ("in over my head") that the pretrial judge used when he advised petitioner that he could change his
24  mind about self-representation.  Petitioner argues that this constitutes evidence he actually relied on the judge's "promise" when he made the decision to represent himself. (Traverse at 3.)  This
25  court disagrees.  Regardless of the language petitioner used when he asked for an attorney, for the reasons set forth above the court concludes that the pretrial judge's statements did not influence
26  petitioner's strong desire to represent himself.

1        Petitioner argues that because the judge reminded him twice that he could revisit

2   the issue of self-representation "at any time," he was induced "to forge ahead secure in the

3   knowledge that he could ultimately withdraw if he became overwhelmed." (P&A at 24.)

4   However, there is no evidence in the record that petitioner chose to continue representing himself

5   in reliance on the judge's comments.  On the contrary, as set forth above, petitioner clearly and

6   consistently asserted his right to represent himself throughout the proceedings, until the trial was

7   almost over.  Further, petitioner was specifically told on the <u>Faretta</u> waiver form that if he

8   changed his mind about self-representation during trial, he might not be permitted to postpone

9   the case to obtain an attorney.  Because of this, petitioner cannot reasonably argue that he

10  believed he could obtain an attorney at any time during the trial, regardless of the prejudice to the

11  other participants.  The mere fact that the judge told petitioner he could change his mind about

12  self-representation, and that petitioner acknowledged these statements, does not mean that

13  petitioner relied on them in making his decision.  Put another way, there is no evidence that

14  petitioner's decision to represent himself at trial "rest[ed] in any significant degree" on the trial

15  court's comments.  <u>See</u> <u>Santobello v. New York</u>, 404 U.S. 257, 262 (1971).

16      Petitioner's claim that his decision to represent himself was coerced or rendered

17  involuntary by the judge's statements is not supported by the record.  The record reflects that

18  petitioner was fully informed about the dangers and disadvantages of self-representation and that

19  he voluntarily waived his right to counsel.  The decision of the state appellate court to the same

20  effect is not unreasonable and should not be set aside.

21          b.  <u>The Trial Judge did not Violate Petitioner's Constitutional Rights in Denying</u>

22             <u>His Request for Counsel</u>

23      As described above, after petitioner concluded the direct examination of his first

24  witness, he asked whether the trial could be "put off" so that he could attempt to "find counsel

25  that might help [him]."  (RT at 1082.)  The parties dispute whether petitioner's remarks

26  constituted an unequivocal request for counsel.  The California Court of Appeal concluded that

1  they did not.  However, even assuming arguendo that petitioner's comments constituted an

2  unequivocal request for counsel, the court concludes that the request was properly denied.

3       It is true that a defendant's initial decision to exercise his <u>Faretta</u> right and

4  represent himself at trial is not "a choice cast in stone."  <u>Menefield v. Borg</u>, 881 F.2d 696, 700

5  (9th Cir. 1989).  A criminal defendant may initially assert his right to self-representation and then

6  change his mind and request counsel for the remainder of the proceedings.  <u>Id.</u>  However, "the

7  right to counsel - once waived - is no longer absolute," and may be denied when the necessary

8  delay involved in proceeding with counsel would prejudice the court, the parties, or the

9  witnesses.  <u>Id.</u>  By the time petitioner made his request for a continuance to obtain counsel, the

10  prosecutor had presented his entire case and petitioner had examined one of his witnesses.  If

11  petitioner obtained the services of counsel, a lengthy delay would have been necessary to allow

12  counsel to prepare for this "complex child molestation trial with a life sentence hanging in the

13  balance."  (Opinion at 8.)  Petitioner contends that he asked for only a one-week delay.  (Traverse

14  at 4.)  However, the record does not bear this out.  Petitioner asked whether he could "put off"

15  the trial so that he could try to "find counsel" to help him.  (RT at 1082.)  If he managed to "find

16  counsel," a lengthy delay of the trial would have been necessary.  This would have

17  inconvenienced the witnesses (including the child victims), the court, and counsel.

18       Petitioner's attempt to compare his request for a continuance with the trial judge's

19  decision to accommodate his vacation or a prosecution witness is a red herring.  The reasons for

20  other trial postponements are unrelated to petitioner's request for a continuance and have no

21  bearing on the merits of petitioner's claim before the court.  Petitioner's argument that the trial

22  judge acted under an erroneous belief that he could not grant petitioner's request for counsel is

23  equally unavailing.  This court does not construe the judge's comment that petitioner was "pretty

24  much stuck with" his decision to represent himself as an indication that he believed he lacked the

25  authority to grant petitioner's request.  Rather, read in context, the judge was advising petitioner

26  that he was "stuck with" his decision to represent himself because he had waited too long to

1  change his mind.  The trial court gave petitioner several chances to revoke his waiver and obtain

2  counsel, but he showed no inclination to do so until almost the end of trial.

3       "There are times when the criminal justice system would be poorly served by

4  allowing the defendant to reverse his course at the last minute and insist upon representation by

5  counsel."  Menefield, 881 F.2d at 700.  That is the case here.  As the state appellate court

6  explained, "[a]ppointment of counsel at that late stage would almost certainly have required a

7  prolonged postponement of the trial, severely disrupting the proceedings."  (Opinion at 8.)  This

8  court also notes that although petitioner experienced some difficulty in presenting his case, he

9  was familiar with court proceedings and represented himself competently and reasonably well.

10 In light of this, the trial court's denial of petitioner's request for a continuance in order to search

11 for an attorney was not so arbitrary as to violate due process or the Sixth Amendment right to

12 counsel.  Ungar, 376 U.S. at 589.

13      The decision of the California Court of Appeal that petitioner's constitutional

14 rights were not violated by the trial court's denial of his request for a continuance is not contrary

15 to or an unreasonable application of United States Supreme Court authority and should not be set

16 aside.  Accordingly, petitioner is not entitled to relief on this claim.

17      B.  Jury Instruction Error

18      Petitioner's next claim is that the trial court violated his right to be convicted

19 based on a finding of guilt beyond a reasonable doubt when it instructed the jury on evidence of

20 other sexual offenses, pursuant to the 1999 revised version of CALJIC No. 2.50.01.  He claims

21 that the error had a prejudicial effect on the verdict because the witnesses to the other offense

22 crimes were older and more credible than the child victims in the current case.[8]

23 \\\\\

24

25  [8]  Three teenage witnesses testified at petitioner's trial about prior acts of sexual
    molestation committed by petitioner, in order to prove petitioner's propensity to commit sex
    offenses against minors.  (RT at 941, 971, 905.)  The witnesses to the current crimes were seven,
26  six, and four years old.  (Id. at 585, 625, 452, 472-73, 521.)

1          The California Court of Appeal rejected petitioner's jury instruction claim,

2    reasoning as follows:

3

4          Defendant argues the court erred in giving the 1999 revision of
           CALJIC No. 2.50.01, which states in relevant part:  "If you find
5          that the defendant committed a prior sexual offense, you may, but
           are not required to, infer that the defendant had a disposition to
6          commit the same or similar type sexual offenses.  If you find that
           the defendant had this disposition, you may, but are not required to,
7          infer that he was likely to commit and did commit the crime, or
           crimes, of which he is accused.  [¶]  However, if you find by a
8          preponderance of the evidence that the defendant committed a
           prior sexual offense, that is not sufficient by itself to prove beyond
9          a reasonable doubt that he committed the charged crimes.  The
           weight and significance of the evidence, if any, are for you to
10         decide.  [¶]  You must not consider this evidence for any other
           purpose."

11         According to defendant, this instruction denied him due process of
           law because it impermissibly lessens the prosecution's burden to
12         prove him guilty beyond a reasonable doubt.

13         The contention fails for the reasons stated by the California
           Supreme Court in rejecting a like claim of error in <u>People v.</u>
14         <u>Reliford</u> (2003) 29 Cal.4th 1007.  (<u>Id.</u> at pp. 1009, 1012-1016.)

15   (Opinion at 9.)

16         Petitioner claims that the 1999 revised version of CALJIC No. 2.50.01 violated

17   his right to due process for the following reasons:

18         Petitioner respectfully submits that, as given, CALJIC No. 2.50.01
           violates the constitutional requirement of proof beyond a
19         reasonable doubt.  Because the instruction told the jury that prior
           sexual acts proved by a preponderance of the evidence cannot by
20         itself prove the charged offense beyond a reasonable doubt, the
           instruction implies that when prior sexual acts are proved beyond a
21         reasonable doubt, such evidence can itself prove the charged
           offense beyond a reasonable doubt.

22

23   (P&A at 31.)  He argues that the instruction contains an "improper, permissive inference"

24   allowing the jurors to find him guilty of the charged crimes if they found the testimony of the

25   older victims to be true beyond a reasonable doubt.  (<u>Id.</u> at 33.)

26   \\\\\

21

1    In Gibson v. Ortiz, 387 F.3d 812, 820 (9th Cir. 2004), the Court of Appeals for

2  the Ninth Circuit held that the 1996 version of CALJIC No. 2.50.01 and CALJIC No. 2.50.1,

3  when given together at a criminal trial, violate the defendant's Fourteenth Amendment due

4  process rights to be proven guilty beyond a reasonable doubt because they allow a jury to: (1)

5  find that a defendant had committed prior sexual offenses by a preponderance of the evidence;

6  (2) infer from those past offenses a predilection for committing sexual offenses; and (3) further

7  infer guilt of the charged offense based on those predilections.  CALJIC No. 2.50.01 was

8  amended in 1999 to clarify how jurors should evaluate a defendant's guilt relating to the charged

9  offense if they found that he had committed a prior sexual offense.  The newly revised

10  instruction, which was given at petitioner's trial, added the following language: "However, if you

11  find by a preponderance of the evidence that the defendant committed prior sexual offenses, that

12  is not sufficient by itself to prove beyond a reasonable doubt that he committed the charged

13  crimes."  CALJIC No. 2.50.01 (7th ed. 1999).  In 2002, CALJIC No. 2.50.01 was revised again,

14  to delete the sentence "[t]he weight and significance of the evidence, if any, are for you to

15  decide," and to insert the following statement:  "If you determine an inference properly can be

16  drawn from this evidence, this inference is simply one item for you to consider, along with all

17  other evidence, in determining whether the defendant has been proved guilty beyond a reasonable

18  doubt of the charged crime."  In People v. Reliford, 29 Cal.4th 1007, 1016 (2003), the California

19  Supreme Court upheld the constitutionality of the 1999 version of CALJIC No. 2.50.01, but

20  commented that it had been "improved" by the addition of the sentence in the 2002 amendment.

21    Petitioner's arguments with respect to the constitutionality of the 1999 version of

22  CALJIC No. 1.50.01 have been rejected by numerous federal courts in unpublished opinions.

23  See e.g. Smith v. Ryan, 220 F.Appx. 563, **3 (9th Cir. 2007); McGee v. Knowles, 218 F.Appx.

24  584, **1 (9th Cir. 2007); Cata v. Garcia, No. C 03-3096 PJH (PR), 2007 WL 2255224, *15-16

25  (N.D.Cal., Aug. 3, 2007); Perez v. Duncan, 2005 WL 2290311 (N.D.Cal., Sept. 20, 2005).

26  Petitioner acknowledges this, but argues that these decisions are incorrectly decided.  (P&A at

1    34.)  This court disagrees.  Based on the reasoning of the above-cited opinions, this court

2    concludes that the decision of the state court rejecting petitioner's jury instruction claim is not

3    contrary to or an unreasonable determination of United States Supreme Court authority.

4    Accordingly, petitioner is not entitled to relief on this claim.

5            For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's

6    application for a writ of habeas corpus be denied.

7            These findings and recommendations are submitted to the United States District

8    Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

9    days after being served with these findings and recommendations, any party may file written

10   objections with the court and serve a copy on all parties.  Such a document should be captioned

11   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

12   shall be served and filed within ten days after service of the objections.  The parties are advised

13   that failure to file objections within the specified time may waive the right to appeal the District

14   Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

15   DATED: 06/23/08

16                                   /s/ Gregory G. Hollows

17                              _____
                                GREGORY G. HOLLOWS
                                UNITED STATES MAGISTRATE JUDGE

18   ggh:8
     Mccormick735.hc

19

20

21

22

23

24

25

26